UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DRINNON MARINE, LLC                          CIVIL ACTION

VERSUS                                       NO. 19-12485

FOUR RIVERS TOWING OF                        SECTION M (3)
ALABAMA, LLC, *et al.*

## FINDINGS OF FACTS & CONCLUSIONS OF LAW

This is a case involving claims for breach of contract and open account on a charter agreement for the *M/V Hazel Ann*.  Plaintiff Drinnon Marine, LLC ("Drinnon LLC") filed this suit against Four Rivers Towing of Alabama, LLC, Four Rivers Towing, LLC, and Charles Richard "Sam" Kinzeler (collectively, "Defendants") alleging that Defendants are obligated by contract to pay Drinnon LLC the amount of $185,141.60 in unpaid invoices plus an additional amount for attorney's fees.[1]  Drinnon LLC alleges that pursuant to the charter agreement between the parties, Four Rivers Towing of Alabama, LLC, Four Rivers Towing, LLC, and Kinzeler personally are liable jointly, severally, and in solido.[2]

This matter was tried before the Court, sitting without a jury, over two days.  Having considered the evidence admitted at trial, the arguments of counsel, post-trial submissions, and the applicable law, the Court issues its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.  To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such, and vice versa.

---

[1] R. Doc. 21.
[2] *Id*. at 5.

## FINDINGS OF FACT

### I.  JURISDICTION

1.      This Court has jurisdiction over the claims in the complaint under the admiralty and maritime laws of the United States, 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure.  The Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the requisite amount in controversy is satisfied.

2.      This Court has admiralty and diversity jurisdiction over the counterclaim.  In addition, any claims which do not fall within this Court's admiralty or diversity jurisdiction are within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

3.      Venue is appropriate in the Eastern District of Louisiana.

### II.  THE PARTIES

4.      Drinnon LLC is a Louisiana limited liability company, whose members are Evelyn Drinnon and her husband, Homer Drinnon, citizens of Louisiana.  Drinnon LLC is an inland waterways towboat company and the owner of the *M/V Hazel Ann.*[3]

5.      Kinzeler is domiciled in, and thus a citizen of, Alabama.[4]  Kinzeler has owned and operated companies involved in the towing of vessels for hire on the inland waterways of the United States for the last 40 years.[5]

6.      Four Rivers Towing of Alabama, LLC ("Four Rivers AL") is an Alabama limited liability company of which Kinzeler is the managing member.[6]

---

[3] R. Doc. 45 at 2, 6.
[4] *Id* at 2.
[5] Testimony of Kinzeler (R. Doc. 59 at 146-47).
[6] R. Doc. 45 at 2; Exhibit 20.

7.    Four Rivers Towing, LLC ("Four Rivers KY") is a limited liability company organized and existing pursuant to the laws of Kentucky.  Kinzeler is the managing member of Four Rivers KY, so it, too, is a citizen of Alabama for purposes of diversity jurisdiction.[7]

## III.    THE CHARTER AGREEMENT AND INVOICES AND PAYMENTS UNDER THE AGREEMENT

8.    On September 18, 2018, Kinzeler texted Homer Drinnon to inquire about a charter for a towboat, stating: "Homer my name is Sam Kinzeler with four rivers towing [*sic*] out of Mobile.  I will call you in just a few minutes."[8]

9.    Thereafter, the parties agreed to an oral time charter of a towboat, the *M/V Hazel Ann*, at a day rate of $2,800.00 plus fuel and lube – meaning Four Rivers would pay for the diesel fuel and lube oil consumed.[9]  The original time charter lasted for four days in November 2018.[10]

10.    The vessel was chartered again from January 3, 2019, through April 16, 2019, except for the period of February 9, 2019, through March 9, 2019, when the *M/V Hazel Ann* returned to Louisiana for repairs.

11.    Kinzeler conducted business negotiations on behalf of Four Rivers KY and Four Rivers AL as the managing member of each.[11]

12.    Kinzeler testified that he did not expressly tell Evelyn or Homer Drinnon that the charter agreement was to be with Four Rivers KY.[12]

13.    Both Evelyn Drinnon[13] and Homer Drinnon[14] testified that the charter agreement was with Kinzeler individually.  Yet, inconsistently, Evelyn Drinnon also testified that she

---

[7] R. Doc. 45 at 2; Exhibit 19.
[8] Exhibit 12 at 1.
[9] Testimony of Evelyn Drinnon (R. Doc. 59 at 9); Kinzeler (R. Doc. 59 at 151-52); Homer Drinnon (R. Doc. 60 at 42).
[10] Exhibit 12 at 2; Testimony of Kinzeler (R. Doc. 59 at 53-54, 102).
[11] Testimony of Kinzeler (R. Doc. 59 at 150).
[12] *Id*. at 56.
[13] Testimony of Evelyn Drinnon (R. Doc. 59 at 9).
[14] Testimony of Homer Drinnon (R. Doc. 60 at 42).

believed that Kinzeler was a broker,[15] thereby implying that he was acting on behalf of another entity, not himself.

14.     Captain Ovide St. Ann (sometimes called "Ov") was the principal captain or pilot of the *M/V Hazel Ann*.  St. Ann could not be found ahead of trial so did not testify at trial.  His testimony on crucial points could have aided the Court.

15.     Homer Drinnon instructed Kinzeler to deal directly with St. Ann concerning the operation of the *M/V Hazel Ann*, including any problems Four Rivers had with the towboat during the term of the charter.[16]

16.     On January 28, 2019, Kinzeler sent a text to Homer Drinnon stating that "Ov [St. Ann] wanted me [Kinzeler] to send our address. Four Rivers Towing, 8919 Bay Point Drive, Elberta, Al 36530."[17]

17.     Drinnon LLC issued invoices under the charter for the use of the *M/V Hazel Ann* as follows:[18]

| Invoice No. | Invoice Date | Start Date | Final Date | Total Days | Daily Rate | Amount |
|---|---|---|---|---|---|---|
| 144 | 1/16/2019 | 1/3/2019 | 1/7/2019 | 5 | $ 2,800.00 | $ 14,000.00 |
| 145 | 1/21/2019 | 1/8/2019 | 1/15/2019 | 8 | $ 2,800.00 | $ 22,400.00 |
| 146 | 2/5/2019 | 1/16/2019 | 1/31/2019 | 16 | $ 2,800.00 | $ 44,800.00 |
| 147 | 3/1/2019 | 2/1/2019 | 2/8/2019 | 8 | $ 2,800.00 | $ 22,400.00 |
| 148 | 3/26/2019 | 3/10/2019 | 3/25/2019 | 16 | $ 2,800.00 | $ 44,800.00 |
| 150 | 4/10/2019 | 3/26/2019 | 4/8/2019 | 14 | $ 2,800.00 | $ 39,200.00 |
| 151 | 4/20/2019 | 4/9/2019 | 4/16/2019 | 8 | $ 2,800.00 | $ 22,400.00 |
| 152 | 4/24/2019 | N/A | N/A | N/A | N/A | $ 924.60 |
| 153 | 5/1/2019 | 4/17/2019 | 4/18/2019 | 2 | $ 2,800.00 | $ 5,600.00 |
| | | | | | | $216,524.60 |

18.     Drinnon LLC received payments on these invoices as follows:[19]

---

[15] Testimony of Evelyn Drinnon (R. Doc. 59 at 24).
[16] Testimony of Kinzeler (R. Doc. 59 at 150).
[17] Exhibit 12 at 5.
[18] R. Doc. 45 at 6.
[19] *Id*.

| Payments | Payment Date | | | | Amount |
|---|---|---|---|---|---|
| | 2/15/2019 | | | | $ (11,783.00) |
| | 4/4/2019 | | | | $ (19,600.00) |
| | | | | | $ (31,383.00) |

19.     The invoices sent by Drinnon LLC for the charter hire were billed to Four Rivers at Kinzeler's request.[20]   Pursuant to those instructions, the invoices were sent to "Four Rivers Towing" or "4 Rivers" and indicate that the services were requested by "Sam Kinzeler," "Sam," or "Sam K."[21]   At no time during the charter did Drinnon LLC bill Kinzeler in his individual capacity nor did Kinzeler, individually, pay the invoices billed to Four Rivers.

20.     The two payments for charter hire made to Drinnon LLC – the first on February 15, 2019, in the amount of $11,783.00, and the second on April 4, 2019, in the amount of $19,600.00 – were made by check drafted on Four Rivers KY.[22]   Even after Drinnon LLC received the two payments, it continued to bill "4 Rivers" or "Four Rivers Towing" on subsequently issued invoices numbered 150 through 153.[23]

21.     The Court finds that the charter agreement was entered into between Drinnon LLC and Four Rivers, not Kinzeler individually.   Even Evelyn Drinnon believed Kinzeler acted as a broker, which connotes that he was not acting for himself.   In his communications with Drinnon LLC concerning the charter, Kinzeler never represented that he was acting for himself but always on behalf of Four Rivers.   At the commencement of the relationship, Kinzeler texted Homer Drinnon about a charter, specifically referring to his connection to Four Rivers: "Homer my name is Sam Kinzeler with four rivers towing [*sic*] out of Mobile."[24]   From the outset, then, Kinzeler disclosed to Drinnon LLC that he was acting on behalf of Four Rivers in regard to the charter.

---

[20] *Id*.
[21] Exhibits 1-9.
[22] R. Doc. 45 at 6.
[23] Exhibits 6-9.
[24] Exhibit 12 at 1.

22.     The Court also finds that the course of conduct between Drinnon LLC and Four Rivers after confection of the charter agreement confirms that it was entered into between Drinnon LLC and Four Rivers, not Kinzeler individually.  Thus, on January 28, 2019, at captain St. Ann's request (a request presumably prompted by Homer Drinnon), Kinzeler texted "our address" to Homer Drinnon, as follows: "Four Rivers Towing, 8919 Bay Point Drive, Elberta, Al 36530."  The text does not read "my address," but "our address."  And in the text, the "our" was identified as "Four Rivers Towing," not Kinzeler.  The invoices sent by Drinnon LLC for the charter hire were billed to Four Rivers at Kinzeler's request.  Pursuant to these instructions, the invoices were expressly directed to "Four Rivers Towing" or "4 Rivers" and indicate only that the services were requested by Kinzeler, not that he was responsible for paying them.  At no time during the charter did Drinnon LLC bill Kinzeler individually nor were the invoices that were directed to Four Rivers ever paid by Kinzeler on his own behalf.  Instead, the two payments made to Drinnon LLC were paid by a Four Rivers check.  Even after Drinnon LLC received these two payments, it continued to bill "4 Rivers" or "Four Rivers Towing" on subsequent invoices.

23.     The Court finds further that Drinnon LLC either was or should have been on notice that Kinzeler was acting for his principal, Four Rivers, and not in his individual capacity.  To the extent that the trial testimony was in conflict, the Court specifically finds that Kinzeler's testimony on this point was more credible that that of Evelyn and Homer Drinnon.

24.     In making these findings, the Court has not distinguished between Four Rivers KY and Four Rivers AL.  This is because Kinzeler testified that though there is no agreement between Four Rivers KY and Four Rivers AL, he routinely transfers money between the two companies, principally, to cover payroll.[25]   In this way, Kinzeler has treated the companies as one, at least in

---

[25] Testimony of Kinzeler (R. Doc. 59 at 134-36).

regard to the availability of funds for payment to Drinnon LLC under the charter agreement. Accordingly, for purposes of the claims asserted by Drinnon LLC, the Court finds that both Four Rivers AL and Four Rivers KY are parties to the charter agreement as if entered into by each.

25.     On August 2, 2019, Drinnon LLC, through its counsel, made demand upon Four Rivers AL and Kinzeler for payment of the outstanding invoices.[26]  The certified return receipt indicates that the August 2, 2019 demand was received by Dana Kinzeler, Kinzeler's wife, on August 8, 2019.[27]  Kinzeler testified that he received the demand but made no further payments on behalf of Four Rivers.[28]

26.     Kinzeler concedes that Drinnon LLC is owed some amount of money on its invoices.[29]  It is now the Court's task to determine that amount.

## IV.    FOUR RIVERS' CLAIMED REDUCTIONS OF THE BILLED CHARTER HIRE

27.     Four Rivers seeks reduction of the total amount billed by Drinnon LLC for charter hire based upon proration, vessel standby and delays due to mechanical problems, and an under-crewed vessel.

28.     However, the charter the parties entered contains no express agreement concerning any hourly rate, prorated rate, or standby rate.[30]  The charter agreement simply provided for a day rate of $2,800.00 plus lube and fuel.

29.     In assessing Four Rivers' claimed reductions, the Court has reviewed each invoice, the corresponding vessel logs and other documentary evidence, and the witness testimony, including, particularly, testimony about whether reductions such as these are customary in the

---

[26] Exhibit 10.
[27] *Id*. at 90-91.
[28] Testimony of Kinzeler (R. Doc. 59 at 107).
[29] *Id*. at 97.
[30] Testimony of Evelyn Drinnon (R. Doc. 59 at 9-10); Kinzeler (R. Doc. 59 at 54); Homer Drinnon (R. Doc. 60 at 43-44).

maritime industry notwithstanding the absence of any express provision for same in the charter agreement.

*Reductions for Proration*

30.     Drinnon LLC billed Four Rivers for 24-hour days at both the beginning and the end of the two periods the *M/V Hazel Ann* was working during the charter (*i.e.,* January 3 through February 8, 2019, and March 10 through April 16, 2019).[31]

31.     Billy Haney is the owner of Dauphin Marine Transportation, LLC ("Dauphin Marine"), a marine brokerage company, which on one occasion, on behalf of its customer, Unity Bunkering, contracted with Four Rivers for use of the *M/V Hazel Ann* to take a tank barge from Mobile to New Orleans for loading and return to Mobile.  He is also a co-owner with Kinzeler of a holding company (H & K Marine) that holds a vessel.[32]  Haney has over 30 years of experience working in the marine industry.[33]

32.     Kinzeler[34] and Haney[35] testified that it is customary in the inland marine industry that the first and last days of the charter are prorated by the hour.

33.     The Court finds that it is customary in the inland marine industry that the first and last days of a charter are prorated by the hour.[36]  Accordingly, the Court will prorate the charter hire for the first and last days of the vessel's service under the charter.  These reductions total $2,216.00.

---

[31] Exhibit 11 at 1, 37-38, 77.
[32] Testimony of Haney (R. Doc. 60 at 4-5).
[33] *Id*. at 23.
[34] Testimony of Kinzeler (R. Doc. 59 at 63, 83-84).
[35] Testimony of Haney (R. Doc. 60 at 31).
[36] Testimony of Evelyn Drinnon (R. Doc. 59 at 11, 32); Kinzeler (R. Doc. 59 at 147), Homer Drinnon (R. Doc. 60 at 69-70).

*Reductions for Vessel Standby or Delays Due to Mechanical Problems*

34.     Prior to the start of the charter, Kinzeler inspected the *M/V Hazel Ann* and found it suitable for the work intended for the vessel.[37]

35.     Based on the ship's logs, however, the vessel did not navigate during all 24 hours of each day of the charter.[38]  Instead, the ship's logs frequently contain an entry that the vessel was standing by, without any explanation or reason given.  Defendants urge the Court to attribute all of the standby entries to mechanical problems (or understaffing) preventing the *M/V Hazel Ann* from operating.

36.     But Homer Drinnon testified that if the vessel was standing by it was at the instruction of Kinzeler.[39]  The Court finds that this testimony largely amounts to speculation because Homer Drinnon failed to explain any basis for his having personal knowledge of any such instruction.  In fact, he told Kinzeler to deal with St. Ann on all matters concerning the operation of the *M/V Hazel Ann*.

37.     At no point, though, did Four Rivers (through Kinzeler) cancel the charter because of any alleged standby of the *M/V Hazel Ann*.[40]  Nor did Four Rivers terminate the charter due to the mechanical condition of the *M/V Hazel Ann*.[41]  Drinnon LLC argues that Kinzeler's failure to take such actions on behalf of Four Rivers weighs against any reductions for the vessel's unavailability due to mechanical problems.

38.     Kinzeler testified that he believed the vessel was inoperable for many days throughout the period of the charter, in part, based upon reports he received from St. Ann.[42]  The

---

[37] Testimony of Kinzeler (R. Doc. 59 at 57).
[38] Exhibit 11.
[39] Testimony of Homer Drinnon (R. Doc. 60 at 83-84).
[40] *Id*.
[41] Testimony of Kinzeler (R. Doc. 59 at 60); Exhibits 5-7, 9.
[42] Testimony of Kinzeler (R. Doc. 59 at 70, 84, 86, 89, 160-62).

ship's logs corroborate this belief to some extent as the vessel was regularly on standby without other explanation (*e.g.,* lock delays or bad weather).[43]  However, without St. Ann's testimony, the Court is unable to find that all the entries for standby denote that the vessel was inoperable and, thus, is unable to fix with precision the exact number of days the vessel was out of service due to mechanical problems.  At trial, Kinzeler confessed that even he had not made this calculation.[44]

39.      But the Court does find that the towboat was beset by mechanical problems throughout the charter.  In one instance, Homer Drinnon was even aware that Kinzeler directed that the *M/V Hazel Ann* be taken to the Cooper Blakely Shipyard to repair her keel coolers,[45] although Homer Drinnon was not told about the repairs until after the vessel arrived at the shipyard.[46]  Over Homer Drinnon's objection, the vessel stayed at the shipyard to complete a $2,600.00 temporary repair so Kinzeler would not lose the contract with his customer.[47]

40.      Once repaired, the vessel continued its voyage and loaded a rock tow, before breaking down again.[48]  The logs reflect that the vessel remained on standby at mile marker 156 of the Gulf Intracoastal Waterway ("GIWW") from January 22, 2019, until January 26, 2019.[49]

41.      While the logs reflect that the boat left mile marker 156 eastbound with four barges on January 26, 2019,[50] Kinzeler (who lives nearby) observed that two of the loaded barges were tied off to trees at mile marker 156 from January 26, 2019, until January 28, 2019.[51]  Careful examination of the logs reveals that the *M/V Hazel Ann* must have taken two of the four barges to their destination, Port St. Joe, Florida, and then gone back to pick up the remaining two barges that

---

[43] Exhibit 11 at 2-3, 6-7, 14-15, 17.
[44] Testimony of Kinzeler (R. Doc. 59 at 127).
[45] Testimony of Homer Drinnon (R. Doc. 60 at 48-49).
[46] *Id*.
[47] *Id*. at 49-51.
[48] Testimony of Kinzeler (R. Doc. 59 at 90).
[49] Exhibit 11 at 20-24.
[50] *Id*. at 24.
[51] Testimony of Kinzeler (R. Doc. 59 at 166).

had been left tied off at mile marker 156 for later transport to Port St. Joe.[52]  Kinzeler testified that these actions made sense only if the towboat's captain was seeking to avoid the danger of pushing four loaded barges on the GIWW while running on just one engine.[53]  The voyage was delayed further when the captain had to wait another day for the tide to come in so he and his crew could get the two remaining loaded barges "ungrounded" (*i.e.,* refloated) and return to Port St. Joe with them.[54]

42.     After this specific job was completed, the vessel returned home to Louisiana for a month of repairs totaling $35,000.00 to replace all four keel coolers.[55]

43.     The Court finds that reductions from charter hire for an inoperable vessel are customary in the industry,[56] so it will make deductions for days the *M/V Hazel Ann* was not operable because of mechanical issues.

44.     The Court finds that the vessel was not operable due to mechanical issues on as many as 20.5 days and on as few as about 13.5 days.  This range exists because the testimony on this score is in conflict, St. Ann was unavailable at trial to clarify the question, and the logs are not explicit enough to warrant attributing all of the vessel's standby to mechanical problems.  Accordingly, the Court also finds that the charter hire owed to Drinnon LLC is appropriately reduced by 17 days due to the vessel's unavailability resulting from mechanical problems.

45.     The Court deducts 17 days of charter hire for mechanical issues, which at the rate of $2,800.00 per day amounts to a $47,600.00 reduction.

---

[52] Exhibit 11 at 27-29.
[53] Testimony of Kinzeler (R. Doc. 59 at 164-67).
[54] *Id*. at 163-67.
[55] Testimony of Homer Drinnon (R. Doc. 60 at 51).
[56] Testimony of Evelyn Drinnon (R. Doc. 59 at 32); Kinzeler (R. Doc. 59 at 147), Homer Drinnon (R. Doc. 60 at 69-70).

46.     In April 2019, on the final job under the charter, captain St. Ann aborted a voyage from Mobile to Houston, tying off the tow of the *M/V Hazel Ann* in some trees near Basin Fleet Houma, Louisiana, at mile marker 97.5 of the GIWW, and the towboat, with its tow, did not complete its voyage.[57]

47.     Because the captain abandoned the tow before completing the voyage, Four Rivers will not be charged on invoice no. 151, resulting in a reduction of $22,400.00.

48.     Defendants assert that invoice no. 144 should be reduced because of alleged delays in transiting the Industrial Locks in New Orleans, which prevented the *M/V Hazel Ann* from arriving at its destination on time.  However, as to this trip, Drinnon LLC was never informed of any deadline for the *M/V Hazel Ann* to arrive at its destination.[58]

49.     Because Drinnon LLC was never informed of a deadline for the *M/V Hazel Ann* to arrive at its destination, no reduction will be applied on that account.

50.     Similarly, Kinzeler testified that a customer reduced by $7,000.00 its payment to Dauphin Marine, a subcharterer of the *M/V Hazel Ann* from Four Rivers, because the vessel was late for its docking at the refinery.[59]

51.     Haney testified that it is the custom and practice in the industry that these types of reductions are passed down from customer to subcharterer to charterer.[60]

52.     But, again, because there is no evidence that Drinnon LLC was ever informed of a deadline for the vessel's docking at the refinery, no reduction will be applied on that account.

---

[57] Testimony of Kinzeler (R. Doc. 59 at 104-07).
[58] Testimony of Evelyn Drinnon (R. Doc. 59 at 10-11); Kinzeler (R. Doc. 59 at 62-63); Homer Drinnon (R. Doc. 60 at 44).
[59] Testimony of Kinzeler (R. Doc. 59 at 68-70); Haney (R. Doc. 60 at 28).
[60] Testimony of Haney (R. Doc. 60 at 35).

Moreover, to do so may well entail duplicative reduction since the charter hire was already reduced due to the vessel's mechanical problems.[61]

53.    Invoice no. 152 is a port charge for the *M/V Hazel Ann* dated November 10, 2018, during Four Rivers' first charter of the vessel in November 2018.[62]  Kinzeler's text messages and testimony confirm that the first charter began a few days after November 6, 2018.[63]  Therefore, invoice no. 152 constitutes a charge incurred during a prior charter between Drinnon LLC and Four Rivers, which lies outside of the dates of the charter upon which suit was brought.[64]

54.    Thus, in this suit, Four Rivers is not liable for invoice no. 152 because it reflects charges outside the charter that is the subject of the suit, resulting in a reduction of $924.60.

*Reductions for Inadequate Crew*

55.    The parties to the charter agreement understood that the *M/V Hazel Ann* would operate with a full crew consisting of two captains/pilots and two deckhands.[65]  Although Kinzeler never specifically discussed crew requirements with Evelyn and Homer Drinnon,[66] the parties accepted that this was the standard and required crew complement.

56.    Both Evelyn Drinnon[67] and Homer Drinnon[68] insisted in their testimony, however, that the vessel was always manned by two captains/pilots and two deckhands during the charter to Four Rivers.  The Court finds that this testimony, too, amounts to speculation because neither Evelyn nor Homer Drinnon provided any basis for having personal knowledge of who was onboard

---

[61] Testimony of Kinzeler (R. Doc. 59 at 153).
[62] Exhibit 8.
[63] Testimony of Kinzeler (R. Doc. 59 at 102-03); Exhibit 12 at 2.
[64] R. Doc. 1 at 2; Testimony of Evelyn Drinnon (R. Doc. 59 at 33).
[65] Testimony of Evelyn Drinnon (R. Doc. 59 at 30-31); Kinzeler (R. Doc. 59 at 54).
[66] Testimony of Kinzeler (R. Doc. 59 at 55).
[67] Testimony of Evelyn Drinnon (R. Doc. 59 at 12, 31, 43).
[68] Testimony of Homer Drinnon (R. Doc. 60 at 59).

the vessel at any given time.  In fact, Howard Drinnon told Kinzeler to deal with St. Ann on all matters concerning the operation of the *M/V Hazel Ann*.

57.     Both Homer and Evelyn Drinnon understood the manning requirements of the *M/V Hazel Ann* and the seriousness of violating manning requirements.[69]

58.     Kinzeler testified that he was unaware of any issue concerning inadequate manning until after the conclusion of the charter when he received and reviewed the ship's logs, which on many dates were missing signatures of two captains/pilots and two mates.[70]

59.     Four Rivers did not terminate the charter based on inadequate staffing but, Kinzeler says, this was because he did not know about the issue during the period of the charter.[71]

60.     Kinzeler expected to be paid by his customers for use of the *M/V Hazel Ann* despite the deficiencies.[72]

61.     The Court finds that reductions for inadequate crew are customary in the industry,[73] and it will make reductions from the charter hire for the multiple occasions when the vessel was operating with just one captain/pilot and, consequently, could only operate 12 hours a day.

62.     As with the vessel's mechanical issues, however, Defendants ask the Court to assume the worst about the adequacy of the crew – namely, that every instance of a missing signature or set of initials in the ship's logs means that the vessel was under-crewed, rather than the result of sloppy log-keeping, which is what Drinnon LLC contends.[74]  The Court is unwilling

---

[69] Testimony of Evelyn Drinnon (R. Doc. 59 at 29-30); Homer Drinnon (R. Doc. 60 at 70-71).  "[A]n individual licensed to operate a towing vessel may not work more than 12 hours in a consecutive 24-hour period except in an emergency."  46 U.S.C. § 8104(h).  Section 8104(j) subjects the owner, charter, or managing operator of a vessel that violates subsection (h) to liability to the government for a civil penalty of $10,000.00.

[70] Testimony of Kinzeler (R. Doc. 59 at 65, 181).

[71] *Id*. at 119.

[72] *Id*. at 64-65.

[73] Testimony of Evelyn Drinnon (R. Doc. 59 at 32); Kinzeler (R. Doc. 59 at 147), Homer Drinnon (R. Doc. 60 at 69-70).

[74] Testimony of Evelyn Drinnon (R. Doc. 59 at 43).

to rule on the basis of this assumption.  Defendants' claim is largely based on the ship's logs.[75] Kinzeler testified that St. Ann told him on at least one occasion that the *M/V Hazel Ann* was without a second captain, but this was not confirmed as to every instance of a missing signature in the logs. Nor did Kinzeler have personal knowledge of who was onboard the vessel at any given time.  The question of inadequate crew is another point on which St. Ann's testimony would have been clarifying.

63.     The Court finds that the vessel was under-crewed on as many as 16 days and as few as about 10 days, suggesting that the charter hire is reasonably reduced by 13 days due to an inadequate crew.

64.     The Court deducts 13 days of charter hire for understaffing issues, which at the rate of $1,400.00 per day (for twelve hours of work) amounts to a $18,200.00 reduction.

*Paid When Paid*

65.     The parties, through Evelyn Drinnon and Kinzeler, testified that Drinnon LLC would get paid when Kinzeler got paid by its subcharterer customers.[76]

66.     Nevertheless, Drinnon LLC's invoices all indicate payment is due within 30 days.[77] And Homer Drinnon testified that payment was due within 30 days of receipt of the invoice.[78]

67.     At trial, Kinzeler was unable to remember or produce evidence of all the payments he received from his customers.[79]  In fact, Kinzeler testified that he was still seeking payment from some of his customers as late as the Sunday before trial.[80]

---

[75] Testimony of Kinzeler (R. Doc. 59 at 182).
[76] Testimony of Evelyn Drinnon (R. Doc. 59 at 10); Kinzeler (R. Doc. 59 at 54).
[77] Exhibits 1-9.
[78] Testimony of Homer Drinnon (R. Doc. 60 at 44).
[79] *Id*. at 74.
[80] *Id*. at 81.

68.     As a result, Four Rivers failed to carry its burden of proof that any reductions are warranted on the basis of a "paid when paid" custom, even were it applicable to the charter agreement – a question the Court need not and does not reach.

*Reductions Applied*

69.     The total invoiced amount of $216,524.60 should be reduced by the payments already made ($31,383.00), the prorated amount ($2,216.00), the amounts attributable to delays caused by mechanical problems ($47,600.00) and understaffing ($18,200.00), and to abandonment of the final voyage under the charter ($22,400.00), and the inapplicable port charge ($924.60), resulting in a final amount owed of $93,801.00.

## <u>CONCLUSIONS OF LAW</u>

1.     "[I]t is an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law." *Kossick v. United Fruit Co.,* 365 U.S. 731, 734 (1961); *see also Operaciones Tecnicas Marinas, S.A.S. v. Diversified Marine Servs., L.L.C.*, 658 F. App'x 732, 738 (5th Cir. 2016).

2.     The interpretation of a maritime contract is a question of law.  *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680 (5th Cir. 2019).

3.     "'When interpreting maritime contracts, federal admiralty law rather than state law applies.'"  *LLOG Expl. Co. v. Signet Mar. Corp.*, 673 F. App'x 422, 425 (5th Cir. 2016) (quoting *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013)).

4.     "In maritime contract disputes, federal courts apply general principles of contract law.  However, to the extent that it is not inconsistent with admiralty principles, state contract law may be applicable to maritime contracts." *In re Tasch, Inc.*, 46 F. App'x 731, 2002 WL 1973464, at *2 (5th Cir. July 31, 2002) (citation omitted).

5.      "It is well settled that a plaintiff suing on a contract, whether written or oral, is required to establish the basic elements of a contract, i.e., offer, acceptance, and consideration." *Id.* at *3.

6.      "It is fundamental contract law that a party that breaches a contract is liable for the damages caused by its failure to satisfy its contractual obligations." *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, 113 F. Supp. 2d 987, 999 (E.D. La. 2000).

7.      The Court concludes that the parties entered into a valid, binding, and enforceable maritime contract in the form of the oral charter of the *M/V Hazel Ann* at a day rate of $2,800.00 plus fuel and lube.

8.      "[A]n agent is liable as a party to the contract when the other party has notice that the agent is or may be acting for a principal, but the other party has no notice of the principal's identity." *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418, 1420-21 (5th Cir. 1986).

9.      "One who acts in the capacity of an agent for a disclosed principal is not liable for claims arising out of a contract executed by the agent on behalf of his principal." *Lake City Stevedores, Inc. v. East West Shipping Agencies, Inc.*, 474 F.2d 1060, 1063 (5th Cir. 1973).

10.      "But it is unnecessary to disclose the principal's name on the face of contracts not under seal, where the other party thereto has knowledge or notice of the fact of agency." *Strachan Shipping Co. v. Alexander Eccles & Co.*, 25 F.2d 361, 362 (5th Cir. 1928).

11.      "The determination of whether an agency relationship was sufficiently disclosed or made known is a factual determination." *Stein Eng'rs, Inc. v. Bayou Country Assocs., LLC*, 311 So. 3d 405, 409 (La. App. 2020); *see also Mallinger v. Neal Auction Co.*, 2018 WL 1604982, at *4 (E.D. La. Apr. 3, 2018) (under Louisiana law, "[d]etermining whether the agent put the party

with whom it was dealing on notice of a principal-agent relationship is a factual determination to be decided on a case-by-case basis"); *GWS Eng'g, Inc. v. Gomez*, 135 So. 3d 71, 76 (La. App. 2013) ("The determination of whether an agency relationship exists and in turn, whether that relationship has been disclosed, is a factual determination which must be decided on a case-by-case basis.").

12.     Having found that Drinnon LLC either was or should have been on notice that Kinzeler was acting for his principal, Four Rivers, and not in his individual capacity, the Court concludes that, under the substantive law of agency in a general maritime law setting, Kinzeler acted solely to bind Four Rivers, not himself, to the contract for charter hire.  Therefore, Kinzeler had no obligation to perform the charter agreement which Four Rivers alone undertook.

13.     Therefore, the Court holds that all the claims asserted by Drinnon LLC against Kinzeler, individually, are dismissed with prejudice.

14.     Because Kinzeler testified that he routinely transferred money between Four Rivers KY and Four Rivers AL when Four Rivers already owed charter hire to Drinnon LLC, the corporate distinctions between the two entities have been blurred and should be disregarded, at least for purposes of Four Rivers' obligations under the charter.  *See, e.g., Aker Sols., Inc. v. Shamrock Energy Sols., L.L.C.*, 820 F. App'x 243, 246-47 (5th Cir. 2020).  Consequently, both Four Rivers KY and Four Rivers AL are liable, jointly, severally, and in solido, to Drinnon LLC for the amounts owed by Four Rivers on the invoices.

15.     The Court concludes that mechanical problems and understaffing of the *M/V Hazel Ann*, and the abandonment of the tow during the last voyage under the charter, constitute breaches of the charter agreement, resulting in damages in the amount represented by the charter hire attributable to such breaches.

16. The Court concludes that Four Rivers AL and Four Rivers KY are liable to Drinnon LLC in the amount of $93,801.00 for charter hire under the charter.

17. "[T]he general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fee statutes … to maritime contract disputes." *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 406 (5th Cir. 2003); *see also Sea Link Cargo Servs. Inc. v. Marine Centre Inc.*, 380 F. App'x 460, 463 (5th Cir. 2010) ("Both parties mistakenly argue that they are entitled to attorney's fees under the Louisiana Open Account Statute, La. Rev. Stat. 9:2781.  This is a maritime contract dispute, and '[m]aritime disputes generally are governed by the 'American Rule,' pursuant to which each party bears its own costs.'") (quoting *Tex. A&M Rsch. Found.*, 338 F.3d at 405); *Cheramie Marine, LLC v. Freedom Well Servs., LLC*, 2015 WL 7306438, at *1 (E.D. La. Nov. 19, 2015) ("[U]nder general maritime law, in the absence of a federal statute or a provision for attorney's fees in an enforceable contract, litigants must pay their own attorney's fees.").

18. Therefore, in this maritime contract dispute, where neither the contract nor a federal statute provides for the recovery of attorneys' fees, Drinnon LLC's claim for such fees under the Louisiana Open Account statute is dismissed.

19. "As a general rule, prejudgment interest should be awarded in admiralty cases – not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled." *Ziegler v. Subalipack (M) SDN BHD*, 2018 WL 2933349, at *10 (S.D. Tex. June 12, 2018) (quoting *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 728 (5th Cir. 1980)).

20. The Fifth Circuit recognizes "the bedrock premise that an award for prejudgment interest in actions under general maritime law is the rule rather than the exception," and that

"prejudgment interest must be awarded unless unusual circumstances make an award inequitable." *Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 492 (5th Cir. 1986).

21.    Admiralty courts have broad discretion in setting the prejudgment interest rate. *Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1029 (5th Cir. 1986) (affirming prejudgment interest at federal statutory post-judgment interest rate); *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 753 (5th Cir. 1985) (affirming use of state interest rate compounded daily to account for uncommonly high rate of return during the applicable period); *Plataro Ltd., v. Unidentified Remains*, 695 F.2d 893, 907 (5th Cir. 1983) (observing that the particular interest rate lies within the district court's discretion after it evaluates the circumstances of the case); *In re M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1977) (affirming award of interest at rate equivalent to injured party's actual cost of borrowing).

22.    After considering the circumstances of this case, including the absence from the charter agreement of any provision regarding interest or choice of law, and the crux of the dispute as concerning a maritime contract, this Court will assess prejudgment interest at the legal rate established under 28 U.S.C. § 1961.  *See In re M/V Nicole Trahan*, 10 F.3d 1190, 1196-97 (5th Cir. 1994) (affirming award of prejudgment interest at federal rate when there was no evidence or inequity to support a different rate).

23.    Prejudgment interest shall be calculated from September 6, 2019, the date Drinnon LLC filed its complaint, through the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding September 6, 2019.  28 U.S.C. § 1961(a); *see Reeled Tubing,* 794 F.2d at 1029 (recognizing the usual rule requiring an award of prejudgment interest from the date of loss, but that there are circumstances when a trial court can exercise its

discretion to award prejudgment interest only from the date of judicial demand).  Here, the date(s) of loss and the amount of loss on such date(s) might be said to be the dates and amounts of the nine invoices at issue.  But these invoices make no provision for interest, and the amounts of loss cannot be fixed with precision on an invoice-by-invoice basis given the nature of the reductions that have been applied.  Further, the date of Drinnon LLC's demand letter (August 2, 2009) should not be used as the start date for prejudgment interest because the amount demanded in the letter is different than the amount the Court has awarded.

24.     Under 28 U.S.C. § 1961(a), post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court. ...  Such interest shall be calculated from the date of the entry of the judgment" at the statutory rate.

25.     Generally, "costs – other than attorney's fees – should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).

Accordingly, for the foregoing reasons,

IT IS ORDERED that there be judgment in favor of Drinnon Marine, L.L.C. and against defendants Four Rivers Towing of Alabama, LLC, and Four Rivers Towing, LLC, jointly, severally, and in solido, in the amount of $93,801.00, plus prejudgment from September 6, 2009, through the date of the entry of the judgment, and post-judgment interest from the date of the entry of the judgment, both calculated pursuant to 28 U.S.C. § 1961(a).

IT IS FURTHER ORDERED that there be judgment in favor of Charles Richard "Sam" Kinzeler and against Drinnon Marine, LLC, dismissing all its claims against Kinzeler with prejudice.

New Orleans, Louisiana, this 19th day of July, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE